

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>          Plaintiff,<br><br>          v.<br><br><br><br>Jorge Antonio SOTO<br>Erik Daniel DOMINGUEZ-Flores,<br>Raul GONZALEZ-Ramirez,<br>Cesar GARCIA-Cervantes,<br>Juan Carlos VALENCIA,<br><br><br><br>          Defendants. | Magistrate Docket No. **21-MJ-1757**<br><br>COMPLAINT FOR VIOLATION OF:<br>Title 8, U.S.C., Sec. 1324(a)(1)(A)(ii) and (v)(II) – Transportation of Certain Aliens<br><br>Title 8, U.S.C. Sec. 1324(a)(2)(B)(iii) and Title 18 U.S.C., Sec. 2 – Aiding and Abetting Bringing in Aliens for Financial Gain<br><br>Title 8, USC 1326 Deported Alien Found In The United States |

The undersigned complainant being, duly sworn, states:

### Count One

On or about May 5, 2021, within the Southern District of California, defendants Jorge Antonio SOTO, Erik Daniel DOMINGUEZ-Flores, and Raul GONZALEZ-Ramirez with the intent to violate the immigration laws of the United States, knowing or in reckless disregard of the fact that certain aliens, namely, Alexis ALBINO-Legorreta, Luis Andres MEDINA-Soto, and Saul PALACIOS-Merino, had come to, entered, and remained in the United States in violation of the law, did transport and move said aliens at a place other than a designated Port of Entry or place other than as designated by the commissioner; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and (v)(II).

### Count Two

On or about May 5, 2021, within the Southern District of California, defendants Jorge Antonio SOTO, Erik Daniel DOMINGUEZ-Florez, and Raul GONZALEZ-Ramirez with the intent to violate the immigration laws of the United States, knowing or in reckless disregard of the fact that certain aliens, namely, Alexis ALBINO-Legorreta, Luis Andres MEDINA-Soto, and Saul PALACIOS-Merino, had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said alien for the purpose of commercial advantage and private financial gain; in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii), and Title 18, United States Code, Section 2.

Count Three

On or about May 5, 2021, within the Southern District of California, defendant, Cesar GARCIA-Cervantes, an alien, who previously had been excluded, deported and removed from the United States, was found in the United States, without the Attorney General or his designated successor, the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 202(3) and (4), and 557), having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8 United States Code, Section 1326.

Count Four

On or about May 5, 2021, within the Southern District of California, defendant, Juan Carlos VALENCIA, an alien, who previously had been excluded, deported and removed from the United States, was found in the United States, without the Attorney General or his designated successor, the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 202(3) and (4), and 557), having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8 United States Code, Section 1326.

And the complainant further states that this complaint is based on the attached probable cause statement, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
Wesley Cornue
Border Patrol Agent

SWORN AND ATTESTED TO UNDER OATH BY TELEPHONE, IN ACCORDANCE WITH FEDERAL RULE OF CRIMINAL PROCEDURE 4.1, MAY 6, 2021.

HON. WILLIAM V. GALLO
United States Magistrate Judge

**CONTINUATION OF COMPLAINT:**

Raul GONZALEZ-Ramirez, Jorge Antonio SOTO, Erik Daniel DOMINGUEZ-Flores CesarGARCIA-Cervantes, Juan Carlos VALENCIA

## PROBABLE CAUSE STATEMENT

The complainant states that Alexis ALBINO-Legorreta, Luis Andres MEDINA-Soto and Saul PALACIOS-Merino, are citizens of a country other than the United States; that said aliens haveadmitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On April 12, 2021, Border Patrol Agents (BPA) A. Djokich, C. Sutton, C. Camacho, I. Rodriguez, and E. O'Neill were assigned to the Imperial Beach Border Patrol Station's TargetedEnforcement Unit (TEU) and were conducting anti-smuggling duties in the Imperial Beach Border Patrol Station's area of operations. TEU agents were in plain clothes and operating unmarked government surveillance/enforcement vehicles with fully functioning emergency lights to include one forward facing stale red light and audible police sirens.

At approximately 9:00 AM, Supervisory Border Patrol Agent (SBPA) J. Gutierrez informed TEU agents that a panga boat had landed on shore in Point Loma California near the Naval Base. SBPA Gutierrez further explained the Military Police (MP) had a single suspected alienin custody. Agent Djokich responded to the naval base and discovered the MPs had five suspects in custody, including one later identified as defendant as Erik Daniel DOMINGUEZ-Flores.

Officer Samuel Tate informed BPA Djokich that the individuals were encountered hiding in thenearby brush after employees of the base alerted MPs of multiple suspicious individuals were walking through the secured area.

At approximately 10:00 AM, Agent Djokich approached each individual with an agency issued badge clearly visible hanging on a chain around his neck, and he questioned them as to their citizenship. All individuals, including DOMINGUEZ, stated that they were not citizens of the United States and did not have immigration documents to enter or remain legally. At this time, Agent Djokich arrested all the individuals, including DOMINGUEZ.

1

**CONTINUATION OF COMPLAINT:**

At the station, it was determined DOMINGUEZ had a valid visa and recent entry through the Los Angeles International Airport on February 25, 2021.

At approximately 4:30 PM, Agent Camacho noticed a suspicious Chevrolet Tahoe parked in thevicinity of where the illegal aliens had been apprehended. The windows were down, and a single key was in the ignition. It has been Agent Camacho's experience that alien smuggling organizers will stage vehicles in predetermined locations to facilitate the furtherance of illegal aliens into the United States. Agent O'Neill and Camacho proceeded to search the surrounding area for any illegal aliens that may have not been discovered yet. It has been their experience that aliens will frequently hide in the foliage until a vehicle arrives to pick them up.

At the station, Agent Rodriguez interviewed DOMINGUEZ who initially claimed he was in thearea to take pictures. DOMINGUEZ was not Mirandized. At the time DOMINGUEZ was arrested he only had a wallet with his Mexican voter identification card on him. DOMINGUEZ was asked how he was going to take pictures when he did not have a camera or cell phone on his person. DOMINGUEZ ultimately admitted he dropped his cell phone when he was first observed by the MPs. After being confronted with his inconsistency, DOMINGUEZ admitted he was in the area as a co- conspirator to the alien smuggling event and his role was to get up on a hill and inform the coordinator of his observation to assist in furthering the illegal aliens into the United States.

Furthermore, DOMINGUEZ admitted he drove into the area in the Tahoe that Agent Camacho discovered. DOMINGUEZ gave consent to search his phone and provided a facial image of a subject identified as "Jorge" in his phone contacts. Later, Agent O'Neill, utilizing facial recognition software, identified Jorge as Jorge Antonio SOTO, a known alien smuggler on supervisedrelease. DOMINGUEZ positively identified SOTO in a six-pack lineup and stated he was a coordinator of the event along with a subject only identified as "Apache". Sometime later, when asked how he knew SOTO, DOMINGUEZ claimed he was living with SOTO's brother, Jose Alberto Soto-Septiem, in an apartment complex located on Grove Ave. in Imperial Beach, California. DOMINGUEZ further explained when he completed a successful smuggling event, DOMINGUEZ would take smuggling proceeds to a subject only identified as "Flaco". According to DOMINGUEZ, Flaco will then take the money to Apache who would take the smuggling proceeds into Mexico.

On May 5, 2021, Border Patrol Agent C. Sutton was assigned to the anti-smuggling

2

**CONTINUATION OF COMPLAINT:**

duties at the Imperial Beach Border Patrol Station's area of responsibility. Agent Sutton was in plain clothes operating an unmarked agency vehicle equipped with emergency lights and sirens. At approximately 9:00 AM, Agent Sutton received a cellular phone call from a United States Probation Officer (USPO) regarding an individual who was currently being investigated, later identified as the defendant Jorge Antonio SOTO.

According to the USPO, she was to meet with SOTO in her office at approximately 10:00 AM, regarding SOTO's violation of his supervised release conditions. Agent Sutton notified agents of the conversation he had with the USPO, and they responded to the location of her office. At approximately 10:15 AM, SOTO was observed leaving the office of the USPO and exiting the parking garage driving a grey Dodge Journey SUV. Border Patrol Agents followed SOTO, who was driving fast and erratically, to conduct surveillance. SOTO drove to the parking lot of the La Costa Motel and parked the Dodge Journey at the most northeastern parking space. At approximately 10:49 AM, a white Ford van entered the La Costa Motel's parking lot and parked next to the Dodge Journey SUV. At approximately 10:51 AM, the driver of the van later identified as defendant Erik Daniel DOMINGUEZ-Flores exited the Ford van and started walking towards the Journey that was driven by SOTO. SOTO exited the Journey and began talking to DOMINGUEZ. Agent Sutton observed an individual later identified as Luis Andres MEDINA-Soto in the passenger seat of the Ford van who appeared to be uncomfortable and continually wiping his brow. Agent Sutton also observed a person's head up against the closed window at the back of the van.

At approximately 11:50 AM, Border Patrol Agent M. Cleary observed the Journey and the Ford van leave the La Costa Motel in tandem. From the Motel, SOTO and DOMINGUEZ drove to various locations together, where SOTO would exit the Journey and walk towards the Ford van where he was seen speaking with DOMINGUEZ. SOTO and DOMINGUEZ arrived at the University Square shopping plaza, located on University Avenue in San Diego, CA. Agents decided to conduct a consensual encounter with SOTO and DOMINGUEZ. Border Patrol agents wearing plain clothes, with government issued badges out and visible on their chest, approached the Journey and the Ford van. Agent Cleary observed an individual run away from the front passenger side of the Ford van, later identified as material witness Luis MEDINA- Soto. Agent Cleary began to chase MEDINA and was able to detain him.

Agent Sutton observed MEDINA's actions to abscond, which prompted him to go to the rear side of the van. Agent Sutton observed 17 individuals in the back area of the

3

**CONTINUATION OF COMPLAINT:**

Ford van soaking wet from sweat that appeared to be dripping from them. Agent Sutton opened the rear doors of the van and was overtaken by the radiating heat coming from the van. Agent Sutton conductedan immigration inspection of the individuals that were inside the rear of the Ford van. All the individuals, to include one later identified as defendant Juan Carlos VALENCIA, and two later identified as material witnesses Alexis ALBINO-Legorreta and Saul PALACIOS-Merino, stated that they are from a country other than the United States without documents that would allow them to enter or remain in the United States legally. At approximately 12:28 PM, Agent Sutton placed all the individuals that were in the rear of the Ford van including defendant VALENCIA, and material witnesses ALBINO, and PALACIOS, under arrest. Agent Cleary conducted an immigration inspection on material witness MEDINA. MEDINA stated that he isa citizen of Mexico without documents that would allow him to enter or remain in the United States legally. At approximately 12:34 PM, Agent Cleary placed MEDINA under arrest, and Border Patrol Agent Z. Sharp placed defendants SOTO and DOMINGUEZ under arrest.

At approximately 1:45 PM, while driving to the Imperial Beach Border Patrol Station, Border Patrol Agent C. Camacho observed a black Mercedes Benz that resembled a target vehicle associated to the investigation of SOTO. Based on prior surveillance investigations conducted on SOTO, Agent Camacho was familiar with several vehicles associated with SOTO. Agent Camacho began to follow the Mercedes and used his government-issued cellular phone to search and retrieved the license plate number of the target vehicle associated to SOTO. Agent Camacho was able to confirm that the Mercedes was one of the target vehicles associated to SOTO. Agent Camachofollowed the Mercedes that eventually parked in front of El Kiki Taco Truck in Chula Vista, CA.

Agent Camacho called the Border Patrol Target Enforcement office and notified agents of his observations. Agent Sutton and Agent Sharp responded to the location of the Mercedes. Agent Sutton and Agent Sharp approached the Mercedes and identified themselves as Border Patrol Agents. Agent Sutton and Agent Sharp conducted an immigration inspectionon the driver and passenger of the Mercedes, later identified as defendant Cesar GARCIA- Cervantes and defendant Raul GONZALEZ-Ramirez, respectively. Both GARCIA and GONZALEZ statedthat they are citizens of Mexico without proper immigration documents allowing them to enteror remain in the United States Legally. At approximately 1:50 PM, Agent Sutton placed GARCIA and GONZALEZ under arrest.

**CONTINUATION OF COMPLAINT:**

At the Imperial Beach Border Patrol Station, defendant Jorge Antonio SOTO was advised of his Miranda rights. SOTO stated he understood his rights and was willing to answer questions. SOTO stated that he was arrested for being in the wrong place at the wrong time. SOTO denied his involvement in alien smuggling. SOTO agreed to give consent to search his cell phone.

At the Station, defendant Erik Daniel DOMINGUEZ-Flores was advised of his Miranda rights. DOMINGUEZ stated he understood his rights and was willing to answer questions. DOMINGUEZ stated that at 5:00 AM that day, May 5, an individual by the moniker of "Flaco," instructed DOMINGUEZ that he and "Apache," were going to pick up individuals in the Otay Mesa area and take them to a waiting white passenger van in San Ysidro, California. DOMINGUEZ stated Flaco called him between 11:00 AM, and 12:00 PM, to pick up the white passenger van in San Ysidro, California and take it to a hotel on El Cajon Blvd. DOMINGUEZ stated Flaco told him that SOTO would have a room ready at the hotel for the individuals. DOMINGUEZ stated when he arrived at the hotel he met with SOTO, and SOTO told him there were no rooms available. DOMINGUEZ said they were told to wait 20 minutes before a room would be available but was later told there would be no vacancy.

DOMINGUEZ stated that, because they didn't have a room available at that hotel, they left and went to a different hotel. DOMINGUEZ stated when they arrived at the second hotel, SOTO got a call from "Flaco," and told him he had a hotel room at a different location. DOMINGUEZ stated they parked in the lot and SOTO came to his driver's side window and told him he was going to get food for himself. DOMINGUEZ stated when SOTO returned from getting food, he was arrested along with everyone in the white passenger van. DOMINGUEZ admitted he knew what he was doing was illegal and knew the people in the back of the van were illegally in the United States. DOMINGUEZ stated he did not know how much he was going to get paid for transporting the bodies from place to place. DOMINGUEZ stated his job for today was to pick up the bodies in San Ysidro, California and take them to a hotel room. DOMINGUEZ stated he did not know if they were going to take the bodies further north into the United States.

DOMINGUEZ stated he felt afraid to transport so many people in the back in the van and knew it was wrong. DOMINGUEZ was shown several six packs photo lineups with six photographs each depicting the defendants arrested during this event, each photograph was numbered from one to six. In one line up labeled "A", DOMINGUEZ was able to identify number six as, Jorge SOTO, the driver of the Grey Dodge Journey

5

**CONTINUATION OF COMPLAINT:**

and the person responsible for renting a hotel room to hide the people found in the white passenger van.

At the Station, defendant Raul GONZALEZ-Ramirez, was advised of his Miranda rights. GONZALEZ stated he understood his rights and was willing to answer questions. GONZALEZ stated that he owns and was driving the Mercedes in today's event. GONZALEZ stated that he has been involved in several smuggling events since January of 2021. GONZALEZ stated that he gets paid $250 US Dollars per individual he smuggles in the United States illegally and transports them to Los Angeles, California and turns them over to another individual. GONZALEZ stated that for this event he picked up two individuals and dropped them off in a parked van. GONZALEZ stated that usually a coordinator that goes by the name of "El Apache" calls him and tells him what to do. GONZALEZ stated that he has never seen this individual in person only spoken to him via phone. GONZALEZ was shown a photographic lineup and positively identified the defendant, Cesar GARCIA-Cervantes, as the person he picked up and that was in his vehicle when he was arrested by Agents. GONZALEZ also positively identified defendant SOTO, as the driver of the Dodge Journey SUV, and stated that SOTO, has visited his friend in his apartment. GONZALEZ also identified defendant, Erik Daniel DOMINGUEZ-Flores, as another individual that has visited a friend in his apartment.

Routine record checks of defendant Cesar GARCIA-Cervantes revealed a criminal and immigration history. The defendant's record was determined by a comparison of his criminal record and the defendant's current fingerprints. Official immigration records of the Department of Homeland Security revealed the defendant was previously deported to Mexico on December 4, 2019, through the Paso Del Norte, Texas, bridge. These same records show that the defendant has not applied for permission from the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security, to return to the United States after being removed.

Routine record checks of defendant Juan Carlos VALENCIA revealed a criminal and immigration history. The defendant's record was determined by a comparison of his criminal record and the defendant's current fingerprints. Official immigration records of the Department of Homeland Security revealed the defendant was previously deported to Mexico on March 10, 2020, through San Ysidro, California. These same records show that the defendant has not applied for permission from the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security, to return to the United States after being removed.

**CONTINUATION OF COMPLAINT:**

All three material witnesses ALBINO, MEDINA and PALACIOS admitted to being citizens ofMexico, illegally present in the United States, and not having any documents that would allow them to enter or remain in the United States legally. All material witnesses admitted to makingsmuggling arrangements and agreed to pay between $7,500-9,500 US Dollars each. All material witnesses stated, that after illegally crossing the United States/Mexico International Boundary and entering the United States, they got in dark colored SUV, which ALBINO and PALACIOS identified as a Hummer. That vehicle, material witnesses stated, took them to a separate location and then they got into a large white van that defendant, DOMINGUEZ, was driving. All three material witnesses stated that the white van was full of many people, and ALBINO said they shared only a few water bottles in the van. ALBINO and PALACIOS stated that it was very hot in the van, and ALBINO stated that some of them were feeling dehydrated. All three material witnesses ALBINO, MEDINA and PALACIOS were shown a photographic lineup. MEDINA was able to positively identify SOTO as the driver of the greySUV, and DOMINGUEZ as the driver of the large white van. ALBINO was able to positively identify DOMINGUEZ as the driver of the white van. PALACIOS was unable to identify anyone from the lineup.